ELIZABETH BRIDGES, ET AL. *v.* WM. BURNE, ET AL.

**Estates—County Court Settlement.**

In the absence of proof, surcharging a county court settlement of an estate, it is prima facie evidence of its own correctness, and the party assailing it must overcome by proof this presumption in its favor.

**Same—Division Among Heirs—Acceptance.**

Where there has been a division among heirs of an estate left by the testator, and each party took and enjoyed his pro rata, a subsequent action to set same aside by one of them, with no offer to refund the money received, or beneficial interest derived by virtue of the agreement of division, cannot be maintained.

APPEAL FROM BATH CIRCUIT COURT.

May 3, 1871.

OPINION OF THE COURT BY JUDGE WILLIAMS:

The testator, John Jones, died in March, 1851, leaving a large landed, slave and personal estate to his widow, children and devisees.

As by the will and laws of the land the widow would be endowed for life of one-third of the slaves and land and entitled absolutely to one-third of the personalty, after payment of debts, and as the children and devisees desired the immediate enjoyment of their interest unencumbered with the widow's life estate they and the widow contracted, April 14, 1851, in writing, that she should surrender her rights of dower and distribution under the will and that in place thereof they sold her one-seventh part of her deceased husband's estate of every kind absolutely

after deducting the specific legacies therein named, and the commissioners who had previously been appointed by the county court to divide the estate were directed to divide the land into seven equal parts, which was accordingly done, and each beneficiary took the lot assigned them, including the widow. And November 19, 1851, the children and devisees, including Hiram Bridges and his wife, Elizabeth, and her brother, T. T. Jones, who had been appointed her trustee by the testator conveyed to the widow by proper deeds the title to the lot of land so assigned her by the commissioners.

The widow, Mrs. Jones, took immediate possession of the land, and slaves assigned her and so continued to hold such as she had not sold until her death in 1859, when her executors in pursuance of her will sold land and slaves, etc.

All parties abided by this family arrangement until 1862, when Mrs. Bridges and her children brought this suit asserting an interest of one-sixth in the widow's estate predicated upon the idea that the original agreement and all subsequent conveyances to the widow were illegal and void and this without any offer to refund the money received or any beneficial interest derived by virtue of said agreement and conveyance by her of her dower and distributable interest in testator's estate to said devisees.

The seventh clause of testator's will is as follows:

"I bequeath to my two daughters, Elizabeth Bridges, later Elizabeth Jones, and Lydia L. Bayo, later Lydia L. Jones, each one equal part with the rest of my children hereafter named of my estate, real and personal and mixed, and each one's portion shall be held in the hands of my hereafter named executor to give out for their use and benefit and their husbands shall have no control over it in any manner whatsoever, to sell, rent or hire or receive it under their control in any manner but the power to *sell*, rent or hire shall be with my executor for their use and at the death of either of them or both of my daughters above named their part personal, real or mixed, shall go to their children, except Elizabeth Bridges' son-in-law, Moseley, he shall not come in for any part whatsoever, but my daughter's part in the hands of my executor shall be divided out by him to the rest of my daughters' children."

It is evident the testator intended to vest the entire title, with the right of disposition, sale, etc., in his son, T. T. Jones, who he appointed his sole executor. The right to sell the land and

slaves were as full and ample as the right to pay over the money to his sister and in fact no distinction was made between real and personal estate.

The unlimited right to the use of all was secured to her under the supervision and control of the trustee, and whatever might not be consumed during her life whether money, slaves or land was then to go to her children, save one.

But were this not so still how can we say that both her and her children have not gotten their part.

Had they filled a petition asking the chancellor in view of all the circumstances to allot to the surviving widow absolutely an equivalent for her dower interest and she had consented we can not doubt but that the chancellor would have so ordered and made an equitable allowance to her and the one made by the devisees and Mrs. Bridges and her trustee being not more liberal than we suppose was just and equitable after all parties have acted on it for more than eleven years the chancellor should not disturb it.

Whilst Mrs. Bridges and her children did not get the precise interest devised, yet they got its equivalent, and though the agreement and conveyance might be defective in their execution the chancellor would not loan his power to them on any but equitable terms, and if the terms of the original agreement be not inequitable he will not disturb but rather confirm the arrangement.

As Mrs. Bridges and her children derived a great benefit by the conveyance of the life interest of the widow in the land and slaves and the distributable interest in a large personal estate they should account for all this before being permitted to disturb this family arrangement which they in no manner propose doing.

It is scarcely necessary to determine whether by various acts she and her children are estopped from any assertion to the property assigned to the widow, although some causes of estoppel are imposingly presented, but as the original partition of the property by the acts of the parties so nearly conform to what the chancellor should and would most probably have done that no court of equity should now disturb it.

No motion was made to refer the cause to a commissioner and we can not say that the failure to do so, by the court, when no such application was made by either party is a reversable error.

There is no proof surcharging the county court settlement which in itself is *prima facie* evidence of is own correctness and the party

assailing it must overcome by proof this presumption in its favor, without this the county court settlement can not be disturbed.

The simple dismissal absolutely of the case will be a bar as to all the subject matters in litigation and sufficient to prevent a re-litigation of the same causes though it would perhaps have been more formal to have confirmed the original partition still this is not a cause of reversal.

Wherefore the judgment is affirmed.

Judge Peters not sitting in this case.

*Turner, for appellants.*
*Tenney, for appellees.*